UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADIA HOLUBNYCZYJ-ORTIZ, individually, AND ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED<br><br>    Plaintiffs,<br><br>    -against-<br><br>INCORPORATED VILLAGE OF FLORAL PARK, FLORAL PARK BUILDING DEPARTMENT, FLORAL PARK RECREATION CENTER, FLORAL PARK VILLAGE BOARD, KEVIN M. FITZGERALD, in his capacity as Mayor, and GERARD M. BAMBRICK, in his capacity as the Floral Park Village Administrator,<br><br>    Defendants. | Docket No.: **2:24-cv-7828**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, NADIA HOLUBNYCZYJ-ORTIZ, on behalf of herself and for the benefit of all others similarly situated, by and through the undersigned counsel, and in accordance with the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations, and governing legal authorities, hereby files the instant Complaint against Defendants, INCORPORATED VILLAGE OF FLORAL PARK, FLORAL PARK PUBLIC LIBRARY, FLORAL PARK BUILDING DEPARTMENT, FLORAL PARK RECREATION CENTER, FLORAL PARK VILLAGE BOARD, KEVIN M. FITZGERALD, in his capacity as Mayor, and GERARD M. BAMBRICK, in his capacity as the Floral Park Village Administrator (collectively referred to herein as "Defendants" and the "Village"), for violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.* ("Title II") and Title II's implementing regulations, and the Building Code for the Incorporated Village of Floral Park (Building Code); § 504 of the Rehabilitation Act (29 U.S.C.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*1 | P a g e*

§ 794, *et. seq.*); § 296 of the New York State Executive Law (Human Rights Law), and a common law negligence claim for Plaintiff's personal injuries suffered as a direct result of such violations.

1.      For over 30 years, first under Section 504 of the Rehabilitation Act ("Section 504") and later under the Americans with Disabilities Act ("ADA"), municipalities have been required to take affirmative steps to make their public buildings, facilities, sidewalks and pedestrian routes accessible to persons with disabilities. These laws recognize that the provision of safety and accessibility in the municipality's public facilities is a critical function and mandatory obligation of the local government.

2.      Discrimination by local government *via* failure to comply with accessibility laws tells those with disabilities that town hall is closed to them.

3.      In the Village of Floral Park, it's not a metaphor. The "handicapped entrance" to Village Hall is not ADA-compliant, nor is most of the building.

**EXHIBIT #37:  Side entranceway into Floral Park Village Hall (handicapped entrance).**
Note:  photo shows a buzzer without it noting to be a "handicapped" entranceway into the Village Hall.  Access is provided by a visitor who has to "ring the bell" to request entrance into the building.  In other words, there is no handicapped signage/emblem noting that one must press the buzzer to request to enter the building.  There is also no automatic door opener for those with physical challenges.  See Exhibit #38 and ADA 206.4 for requirements.



*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*2 | P a g e*

4.      Despite the longstanding nature of these requirements, the Village has largely ignored them. Indeed, the Village, with its over 125 full-time employees, has yet to conduct a complete self-evaluation of its current facilities, or to create a publicly available ADA transition plan, despite that all municipalities with over 50 full time employees were required to do so under Federal Law *since 1992*.

5.      As the Village itself set forth in its Round 2 September 2023 application for the "NY Forward" program, "The streetscapes and infrastructure of this District are dated and have outlived their useful life." While it is helpful that the Village is partially aware of its problems, it is not a victim of circumstance, and nor do lip service attempts to comply relieve them of liability under Title II. Treating ADA compliance as a non-priority, despite statutory duty otherwise, is and has been a conscious decision for over three decades. The Village cannot claim to be compliant, and cannot even assert good faith in acting to *become* compliant, while simultaneously seeking grants to merely "improve" ADA compliance as part of other priorities year after year:

*The objectives of the overall project include:*

- Provide a beautified, unified and robust vision for the revitalization of the Business District
- Create opportunities for the adaptive reuse of existing vacant or underutilized buildings
- Improve pedestrian safety and ADA compliance
- Maintain high occupancy for businesses and attract new businesses

2023.

- Provide a beautified and unified vision for Business Districts
- Improve pedestrian safety and ADA compliance
- Implement centralized parking system management
- Maintain high occupancy for businesses and attract new businesses
- Addition of greenery and public spaces
- Integration of artwork

2021.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*3 | P a g e*

6.    On March 2, 2024, Plaintiff attended a political event held by Attorney General Leticia James. Upon arrival at the Floral Park library, which Plaintiff had been to many times, Plaintiff ensured her husband came in with her, as the event was in the basement, accessible to her only by way of a stairlift which was constantly out of service.  Sure enough, when Plaintiff's expert visited:



7.    The chairlift was not operational on March 2, 2024, and Plaintiff needed her husband to remove her from her wheelchair and sit her down, carry her wheelchair down the stairs, then carry her down the stairs. Despite this unnecessary and outrageous embarrassment, the event was generally a success:



Plaintiff, bottom-right.

NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al
Complaint
4 | P a g e

8.    During the event, Plaintiff observed people coming directly in from the parking lot *via* a door in the basement. Although that exit also led to stairs outside, to avoid repeating the embarrassment of earlier, Plaintiff called her husband to meet her in the back and went to exit *via* the door to the parking lot. A man opened and held the door for Plaintiff. Unfortunately, neither the man nor Plaintiff noticed what awaited on the other side of the door:

 

9.    This unmarked step, clearly exceeding a ½ inch height differential, without color contrast demarcation, colored the same at its crest as the lower concrete, is at once a code violation, an ADA violation, and a dangerous condition which caused Plaintiff to suffer, *inter alia*, multiple broken bones, including a fracture to the right femoral rod which was comminuted – *i.e.*, <u>shattered, into pieces</u> –from the distal femoral metadiaphysis to the lateral femoral condyle, a dislocated shoulder, internal bleeding, multiple facial lacerations, and a loss of consciousness, after tumbling over this trap and being thrown from her wheelchair. She required surgical repair to her lips.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK*, *et al*
*Complaint*
*5 | P a g e*

10.    While the Village goes in circles "improving" their ADA compliance, the disabled residents of Floral Park continue to be treated as second-class citizens in brazen and unapologetic fashion, with Plaintiff paying the highest price of all for the Village's decades-long lip service:



11.    Perhaps most egregious of all – this is not the first time someone with physical limitations has fallen due to this *precise* unlawful step. The Village sat on prior written notice and actual knowledge of the danger posed **for 18 years without fixing it.**

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
**6 |** *P a g e*

**FLORAL PARK PUBLIC LIBRARY**
Floral Park, New York 11002
ACCIDENT REPORT

Date: _April 3, 2006_                Time: _12:08 pm_

Name and Address of Person or Persons involved in accident in the Library:

_Patricia Greene_                    ████████████████████

D.O.B.— ███████                      ████████████████████

Briefly describe accident as it happened: While leaving  after library program.
Ms. Greene decided to leave via basement emergency exit. As she exited, she tripped,
not expecting to have to step down, before going up the stairs. Ms Greene walks
with the use of a cane. As she tripped and fell, she cut the right side of her face,
next to her right eye, bleeding profusely. She also scraped herher hand and feet.

12.    The Village has established through thirty years of noncompliance that it is ***unable*** to properly comply with Federal Law of its own accord. The Village requires an injunction, with continued supervision by the Court, to come into compliance with the ADA. And for this particular Plaintiff, who has paid the highest price of all, it is time for the Village to pay her back in a literal sense for the harm the Village's unlawful inertia has caused.

13.    Plaintiff sues on behalf of herself and all Village residents with mobility disabilities who are being discriminated against and subjected to hazardous conditions due to the access barriers at public facilities, sidewalks and pedestrian rights-of-way in the Village of Floral Park, and to put an end to the Village's decades-long practice of ignoring Federal Law and treating its disabled residents as second-class citizens.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*7 | P a g e*

14.    Plaintiff further individually sues for her damages suffered as the inevitable result of the Village's unlawful practices and negligence.

## JURISDICTION

15.    This is an action for declaratory relief and injunctive relief brought pursuant to Title II, and for monetary damages pursuant to New York State statutory and common law.

16.    This Court has original jurisdiction over claims arising under Title II and Section 504, pursuant to 28 U.S.C. §§ 1331 & 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the same.

17.    This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

18.    This Court has supplemental jurisdiction over Plaintiff's related claim(s) arising under the New York State laws pursuant to 28 U.S.C. § 1367(a), as the same facts and circumstances of the State claims form part of the same case or controversy as the Federal claims.

## VENUE

19.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b). Defendants are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

20.    At all times relevant herein, Plaintiff, NADIA HOLUBNYCZYJ-ORTIZ, was, and still is, resident of the County of Nassau, Village of Floral Park, State of New York; she is a qualified person with a disability under all applicable statutes.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*8 | P a g e*

21.     Ms. Holubnyczyj-Ortiz uses a wheelchair for mobility. She regularly attends meetings held in public meeting spaces, such as the meeting held that day in the basement of Floral Park's public library, located at 17 Caroline Place, Floral Park, New York 11001 (the "Premises"). Ms. Holubnyczyj-Ortiz has experienced and continues to experience barriers entering and exiting the various areas under the Defendants' control, including the public meeting space located at the Premises, along with voluminous other public facilities, public rights of way, sidewalks, and services under the jurisdiction, maintenance, and control of the Village.

22.     The Plaintiff class consists of all persons with mobility disabilities who have been and are being denied the benefits of the Village's public facilities, public rights of way, sidewalks, programs, and services **("Village Features")** because of the Village's continuing failure to design, construct, and maintain Village Features that are accessible to persons with mobility disabilities.

23.     At all times relevant herein, Defendant INCORPORATED VILLAGE OF FLORAL PARK ("Village") was, and still is, an incorporated village within the Town of Hempstead, County of Nassau, State of New York. As such, Defendant Village qualifies as a "public entity" within the meaning of Title II, as that term is defined under 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.10.

24.     At all times relevant herein, the Village was a recipient of federal funds, subjecting the Village to the accessibility requirements of Section 504. The Village received $365,000 *via* the American Rescue Plan Act, and $378,521.05 from FEMA in 2023, $7,114.65 from FEMA in 2022, and $65,917.25 from FEMA in 2021.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*9 | P a g e*

25.    At all times relevant herein, Defendant FLORAL PARK BUILDING DEPARTMENT was and still is a municipal agency under the authority and control of the Village, which is responsible for design, maintenance, construction, and other obligations related to the Village Features.

26.    At all times relevant herein, Defendant FLORAL PARK RECREATION CENTER was and still is a municipal agency under the authority and control of the Village and is responsible for Village-maintained public recreational facilities, including but not limited to the Centennial Gardens of Floral Park.

27.    At all times relevant herein, Defendant FLORAL PARK VILLAGE BOARD was, and still is, the legislative body holding decision making and law making authority for the Village.

28.    That at all times hereinafter mentioned, Defendant GERARD M. BAMBRICK, in his capacity as the Floral Park Village Administrator, was and still is the village administrator for the Village.

29.    KEVIN M. FITZGERALD, in his capacity as Mayor, was and still is the Mayor of the Village.

## CLASS ALLEGATIONS

30.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action, for injunctive and declaratory relief purposes only, on their own behalf and on behalf of all persons similarly situated. The class that Plaintiffs seek to represent consists of all persons with qualified mobility impairments/disabilities who use and/or will use the Village Features.

31.    The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*10 | P a g e*

benefit to the parties and to the Court.

32.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that they are all being denied, or will be denied, their civil rights and access to Defendants' pedestrian facilities, due to the barriers described herein.

33.    Common questions of law and fact predominate, including questions raised by Plaintiffs' allegations that Defendants have failed to provide meaningful access to, *inter alia*, the Village's Library, Town Hall, Museum, Centennial Gardens, and program of pedestrian rights-of-way to persons with mobility impairments in violation of Title II of the ADA and Section 504.

34.    Common questions also include whether Defendants' system-wide policy failures have resulted in their failure to provide compliant, accessible curb ramps whenever they have resurfaced or altered streets and sidewalks and their failure to ensure that their sidewalk program is kept free of obstacles impeding the access of the mobility-impaired throughout the Village.

35.    Plaintiff is an adequate class representative because she is directly impacted by Defendants' failure to provide program access to the Village Features. The interests of the Plaintiff are not antagonistic, or in conflict with, the interests of the class as a whole. Plaintiff's attorneys seeking to represent the class are in good standing, duly qualified, and experienced in class actions, Title II litigation, and ADA litigation generally.

36.    Plaintiffs' claims are typical of the claims of the class as a whole because the Plaintiffs are similarly affected by Defendants' failure to provide access to the Village Features.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*11 | P a g e*

37.    A class action is further appropriate to obviate the risk of conflicting injunctions and Orders in the event multiple Plaintiffs brought suit individually.

38.    Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

39.    Plaintiff's supplemental individual injury claim does not affect the appropriateness of the class as to Title II and Section 504 relief, as Rule 23(4) expressly permits that "an action may be brought or maintained as a class action with respect to particular issues."

40.    References to Plaintiffs shall include each Plaintiff and each member of the class, unless otherwise indicated.

## FACTS COMMON TO ALL CLASS ALLEGATIONS

41.    The Village owns, maintains, controls, or otherwise has jurisdiction over the Village Features, including the Floral Park Village Hall, the Centennial Gardens in Floral Park, the Floral Park Public Library, the Floral Park Museum, and the pedestrian rights of way within the Village.

42.    The Village has failed, and continues to fail, to make these Village Features accessible to and usable by persons with mobility impairments, thereby denying such individuals meaningful access to the Village Features, in violation of federal law.

43.    Defendants have failed both to complete and make available to the public a compliant Self-Evaluation and a compliant Transition Plan. A compliant Transition Plan must include a schedule for making accessibility improvements to Defendants' facilities. Federal law requires that the Transition Plan, once

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*12 | P a g e*

prepared, be made available to the public.

44. On March 2, 2024, Plaintiff was unable to safely avail herself of the benefits offered by the Floral Park Public Library, because it lacked, and continues to lack, a wheelchair-accessible travel routes throughout the facility, and contained impermissible changes in level exceeding a half inch without a ramp.

45. In addition, as to the Floral Park Library:

The Floral Park Library has a platform lift that is inoperable, and has been for at least four months. Also, it directly encroaches on the main egress stairway from levels to level one to the basement area. Per the ADA access board (https://www.access-board.gov/ada/guides/chapter-4-elevators-and-platform-lifts/ ) : "They must be installed so they do not encroach on required means of egress". This platform lift directly encroaches on the required means of egress from each level of the public library to the main floor/egress accessible route. This is not permissible under the ADA requirements/laws.

Also, this platform lift is not in compliance with the current Americans with Disabilities Act 2010 because it has no evidence that it has applied for an exception to the ADA rules by applying for and requesting approval from the Authority Having Jurisdiction (AHJ) within New York State to get approval for this non-conforming design element. They are in direct contradiction to the ADA Guidelines.

In addition, if Floral Park Library had approval to install said device, they are required to maintain this device so it's useable for all handicapped individuals who are attempting to access the lower area event room or the second floor of

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*13 | P a g e*

the library. It is blatantly obvious that this platform lift has been inoperable for many months, thereby it's not in compliance with the basic rules of the ADA.

46.    As such, Defendants failed to provide safe and accessible doors, doorways, stairways, and travel paths throughout the Floral Park Library, which would have allowed wheelchair users, such as Ms. Holubnyczyj-Ortiz, to safely and independently enter, exit, and move throughout the Floral Park Library, including its basement, as required by Title II and Section 504.

47.    On February 6, 2024, Plaintiff was unable enter the Floral Park Village Hall building, because it lacked, and continues to lack, a wheelchair-accessible entrance/exit.

48.    In addition, as to the Floral Park Village Hall:

The Floral Park Village Hall has a platform lift that transports handicapped individuals from the first floor to the second floor to access the public meeting halls, as well as the handicapped bathrooms on the second floor. Said platform lift per the ADA access board: "They must be installed so they do not encroach on required means of egress". This platform lift directly encroaches on the required means of egress; *i.e.,* the stairway from the first floor to the second floor when in use would block a majority of the stairway leading to the second floor, thus impeding on the main means of egress for non-handicapped individuals. This is not permissible under the ADA requirements/laws.

As noted, this platform lift in the Floral Park Village Hall is not in compliance with the current Americans with Disabilities Act 2010 because it would block the main means of egress from the second floor to the main floor. This is in direct contradiction to the ADA. The Village of Floral Park should have applied to the

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*14 | P a g e*

Authority Having Jurisdiction (AHJ) within New York State for an exception to the ADA rules due to its' non-conforming design element. Therefore, they are in direct contradiction to the ADA Guidelines.

Also, as we saw with the Floral Park Public Library, the inclined platform lift in the Library was not working there for months. There is no evidence to show that this platform lift is in good working order as well. Therefore, the Village of Floral Park is in direct contradiction to the ADA Guidelines.

In addition, there is no handicapped signage/emblem noting that one must press the buzzer to request to enter the building. Also, there is also no automatic door opener for those to enter the facility easily. See… ADA 206.4.

49.    The Village of Floral Park Town Hall is thereby in violation of Title II and Section 504.

50.    Notably, the Village of Floral Park Police can only be accessed from within Village Hall, meaning the mobility impaired are further disadvantaged in their access to Village services.  Worse still, the Village Court – where Board of Trustee meetings are frequently held - is located on the second floor of the building with an impermissible and usually inoperable stairlift. The Village's ADA failures in this regard directly obstruct the disabled from the same access to services directly related to justice and civic involvement as the non-disabled.

51.    *Furtherstill*, there is no handicapped parking in the front of Village Hall. There used to be, and the Village removed it.

52.    On February 16, 2024, Plaintiff was unable to avail herself of the benefits and services offered by the Centennial Gardens in Floral Park, because it lacked, and continues to lack, a wheelchair-accessible entrance/exit, and it

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*15 | P a g e*

lacked, and continues to lack, wheelchair-accessible travel routes throughout the facility.

53.    Further, as to the Centennial Gardens:

Centennial Gardens is not accessible to handicapped individuals. There is a rise of approximately 2 ¾" from the street onto the concrete apron which would require a ramp. There are no handicapped parking spaces whatsoever, especially none adjacent to the main entranceway, there is not an accessible route into the park (pathway is a stone path that makes traversing by a wheelchair or walker almost impossible because it's a severe tripping hazard). The pathways are not easily traversable for anyone utilizing a wheelchair (severe tripping hazard), the wood bridge is not easily accessible due to the material use and incline of bridge, and railings that do not comply with handicapped requirements. In addition, the stairway and path going to the lower garden area is definitely not accessible due to the extreme pitch of the walkway, nor made of materials that make navigating down it easy for handicapped individuals, especially children. Also, the pathway through the Centennial Gardens does not end at a handicapped accessible exit to the exterior sidewalks.

54.    The Centennial Gardens are thereby in violation of Title II and Section 504.

55.    On February 21, 2024, Plaintiff was unable to avail herself of the benefits offered by the Floral Park Museum, because it lacked, and continues to lack, a wheelchair-accessible entrance/exit.

56.    Further, as to the Museum:

Even though the Floral Park Museum & Archives is more than likely a historic

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*16 | P a g e*

building, the Village of Floral Park made no attempts whatsoever to make this building accessible to handicapped individuals. There is no accessible route to and from the building, no ramp into the building, no vertical platform lift in the front entranceway, no handicapped parking into the facility (from the front or rear of the building), and no ramps into the rear entrance of the building. This makes it inaccessible to handicapped individuals.

57.    In addition to the above, various sidewalks and curb cuts under the jurisdiction of the Village are not in compliance with Title II.

58.    Notably, in 2017, the Village commissioned Vertex to perform an accessibility study (Vertex Project No: 43116) as to the Floral Park Long Island Railroad Station and surrounding area. Vertex noted multiple ADA violations with recommended solutions. The report indicated the following:

- All sidewalk ramps are non-compliant and in several locations, the ramps are missing altogether.
- There are obstructions and tripping hazards located along many of the pedestrian pathways at and proximate to the Floral Park Station.

59.    It has been over seven (7) years since that study. **The Village has not fixed the majority of the violations noted.**

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*17 | P a g e*

**Photo 1A**
2017



**Photo 1B**
2024



Location: S/W/C of Tulip Ave and Caroline Pl
Direction: South

Comments: Non-Compliant Ramp; Missing detectable warning strip; Obstructions restrict landing; Missing push button; Non-compliant pedestrian signal; Missing ramp.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al
Complaint
18 | P a g e*

**Photo 2A**
2017



**Photo 2B**
2024



Location: S/W/C of Tulip
Ave and Caroline Pl
Direction: West

Comments: Missing ramp;
Missing push button; Non-
compliant pedestrian signal;
tripping hazard.



*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK*, *et al*
*Complaint*
*19 | P a g e*

**Photo 3A**
2017



**Photo 3B**
2024 - same corner, different angle



Location: Intersection of Carnation Ave and Atlantic Ave
Direction: South

Comments: Non-Compliant Ramp; Missing detectable warning strip; Obstructions restrict landing.

An additional photo across the street from a "resolved" corner that was cited in the report. However, this corner was never identified as needing correction.



*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*20 | P a g e*

60.    In the interim, from the Village Board's own survey in 2022:



**Q16: How would you rate the walkability or pedestrian-friendliness in the Village of Floral Park?**

44.9% of participants find the Village walkable.

How would you rate the walkability or pedestrian-friendliness in the Village of Floral Park?
954 responses

- Excellent
- Good
- Fair
- Poor
- I have complained for four years. By
- There are many intersections with no
- It depends where you live and/or par
- depends which area of business dist

**Q17: What suggestions could you offer to improve the walkability or pedestrian-friendliness in the Village of Floral Park?**

*"Traffic lights with turning arrows and count down for pedestrians."*

*"Address traffic congestion at Tulip & Plainfield and along Covert Ave."*

*"Could use a traffic light on Carnation Avenue and Caroline."*

*"Install more corner ramps."*

*"Officers on bikes near tulip."*

*"More speed and traffic safety enforcement. The northwest end of Carnation Avenue is a dangerous stretch for pedestrians and cyclists. Similar issues exist, but less frequently, on Atlantic Ave."*

*"Pedestrian bridge over Jericho!"*

*"To be honest, I think the pedestrian walkway by Associated is a bit confusing. I prefer the Garden City crosswalk model."*

*"Put a No turn on red sign at South Tyson Extension and Tulip Ave (parallel to LIRR near law office)."*

*"A few more benches."*

*"More police presence to encourage full stops and to slow down."*

*"Bike racks- don't just think of walking as the only mode of green transportation. Better sidewalks…"*

*"Another traffic box by the library."*

*"To put more stop signs and speed bumps in the streets to slow down car traffic."*

*"Within the business district, elevated intersections or crosswalks would make both ADA compliance and pedestrian safety better."*

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al
Complaint
21 | P a g e*

61.    Incredibly, from that 2022 survey and *still* disregarded:



**Q18: How would you rate the Universal Access (i.e. ADA accessibility etc.) in the Village of Floral Park?**

Nearly half, 47.8%, of participants find the UA in the Village "good."

How would you rate the Universal Access (i.e. ADA accessibility etc.) in the Village of Floral Park?
901 responses

- Excellent
- Good
- Fair
- Poor
- Not sure
- N/A
- N/a
- Don't know.

1/11 ▼

Q19: What suggestions could you offer to improve the Universal Access (i.e. ADA accessibility etc.) in the Village of Floral Park?

*"Equitable access to main buildings such as library and post office."*

*"Some sidewalks and curbs need to be redone for stroller/wheelchair/walker accessibility."*

*"Provide more signals for vision and hearing impaired."*

*"Get an elevator at Village Hall for the Court."*

*"More stop signs and speed bumps as well as ramps for people with disabilities."*

*"Listen carefully to those with disabilities, they know first-hand what needs to be done."*

*"Escalator down at FP LIRR station."*

*"Library and Post Office need a better long term ramp plan for access."*

*"All curbs should be recessed at crosswalks for wheel chairs and mobility scooters."*

*"Ensuring that shops with aisles are roomy enough for wheelchairs."*

*"More handicap parking, especially on the street. Also, as above, change head in parking to back in parking which is safer and easier for elderly to navigate."*

*"Make adjustments according to ADA standards."*

## FIRST CAUSE OF ACTION
### *Violations of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, ET SEQ.)*

62.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

63.    Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from

participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

64.    The term "disability" includes physical and mental impairments that substantially limit one or more major life activities. 42 U.S.C. § 12102(2). A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

65.    The Plaintiff and the proposed class are persons with disabilities within the meaning of the statute in that they have impairments which substantially limit one or more major life activities, such as walking. They are also qualified in that they are located in the Village and thus are eligible to benefit from the Village Features. Plaintiff and the class are qualified individuals with disabilities within the meaning of 42 U.S.C. §§ 12102, 12131 and 28 C.F.R. § 35.104.

66.    A "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1). Defendants are public entities within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*23 | P a g e*

67.    Title II of the ADA requires public entities, including Defendants, to operate each of their facilities, programs, services or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. §§ 35.149 & 35.151.

68.    Each of the Village Features constitute a facility, program, service or activity under Title II of the ADA.

69.    Defendants have failed to provide persons with mobility impairments meaningful access to their Village Features in violation of Title II of the ADA. Defendants have also failed to operate their Village Features so that they are readily accessible and usable by persons with mobility impairments when viewed in its entirety, in violation of Title II of the ADA.

70.    In addition, Title II of the ADA requires that when a public entity newly constructs facilities or alters any existing facilities in any manner that affects the usability of such facilities, the newly constructed or altered portions must be made accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.lSl(b). Title II's implementing regulations specifically require a public entity to install compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992. 28 C.F.R. § 35.15l(e). A street resurfacing project by a public entity is an alteration triggering sidewalk and pedestrian route accessibility requirements under the meaning of the regulation.

71.    Defendants have failed to install adequate and compliant curb ramps when newly constructing or altering sidewalks, streets, roads, and/or highways, in violation of Title II of the ADA.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
24 | P a g e

72.    The regulations implementing Title II of the ADA also require a public entity to maintain the features of all facilities required to be accessible under the ADA. 28 C.F.R. § 35.133.

73.    Defendants have failed and continue to fail to maintain accessible features within and throughout the Village Features, in violation of Title II of the ADA.

74.    The regulations implementing Title II of the ADA further require public entities to provide and maintain accessibility for temporary facilities. 28 C.F.R. 36 App. A. 4.1.1(4). Defendants have violated Title II of the ADA by failing to provide safe and usable alternate accessible routes for pedestrians with mobility impairments when providing temporary facilities.

75.    Moreover, the regulations implementing Title II of the ADA require public entities to prepare and implement a Self-Evaluation and a Transition Plan to evaluate and improve the accessibility of their existing facilities. Public entities that have authority over streets, roads, or walkways, must include in their Transition Plan "a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs." 28 C.F.R. § 35.150(d)(I)-(2). Public entities must also make a copy of the complete Transition Plan available for public inspection. See 28 C.F.R. § 35.150(d)(l). Defendants have violated Title II of the ADA by entirely failing to prepare a Self-Evaluation of their existing Village Features and other facilities in the Village and by failing to prepare a complete and publicly available Transition Plan to improve the accessibility of such facilities – despite repeated formalized documents noting the need for "improved ADA Compliance".

76.    As a direct and proximate result of the aforementioned acts,

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK*, et al
*Complaint*
25 | P a g e

Plaintiffs have been and continue to be injured.

77.     Defendants' conduct constitutes an ongoing and continuous violation of Title II of the ADA and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

<u>**SECOND CAUSE OF ACTION**</u>

***Violation of Section 504 of the Rehabilitation Act of 1973
(29 U.S.C. § 794, ET SEQ.)***

78.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

79.     Section 504 of the Rehabilitation Act provides in pertinent part: "[N]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ... " 29 U.S.C. § 794.

80.     The Plaintiff, and the class are otherwise qualified individuals with disabilities within the meaning of the statute in that they have impairments which substantially limit one or more major life activities, such as walking, and have reason to and are otherwise eligible to participate in Defendants' Village Features. See 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); See also 28 C.F.R. § 39.103.

81.     Defendants are recipients of federal financial assistance sufficient to invoke the coverage of Section 504 and have received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*26 | P a g e*

82.     Defendants and their agents and employees have and continue to violate the Section 504 and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disabilities, to discrimination in the benefits and services of Defendants' Village Features.

83.     Defendants have additionally violated Section 504 by failing to construct compliant curb ramps at intersections, where they have newly constructed or altered sidewalks, streets, roads or highways since June 3, 1997.

84.     As a direct and proximate cause of the aforementioned acts, Plaintiffs have been and continue to be injured.

85.     Defendants' conduct constitutes an ongoing and continuous violation of Section 504 and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION
### *Declaratory Relief*

86.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of this Complaint.

87.     Plaintiffs contend that Defendants have failed, and are failing, to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of Title II of the ADA, 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq.

88.     Despite receiving a multitude of state and federal funds for becoming ADA compliant, Defendants have failed to correct their deficiencies.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*27 | P a g e*

89.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

### FOURTH CAUSE OF ACTION
***Violation of the New York Human Rights Law***
***(New York Exec. Law § 296, ET SEQ.)***

90.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of this Complaint.

91.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation because of Plaintiff's disability.

92.     Defendants discriminated against Plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation. Each Defendant has aided and abetted others in committing disability discrimination.

93.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2) (c)(iii).

94.     In the alternative, Defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

95.     It would be readily achievable to make Defendants' place of public accommodation fully accessible.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*28 | P a g e*

96.    It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

97.    As a direct and proximate result of Defendants' unlawful discrimination in violation of New York Executive Law, plaintiff has suffered and continue to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

<u>**FIFTH CAUSE OF ACTION**</u>
***Negligence***

98.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of this Complaint.

99.    On or about May 9, 2024, a duly executed Notice of Claim was timely served upon the Village.

100.    More than thirty (30) days have elapsed since the presentation of these claims to Defendants, and Defendants have failed and neglected to adjust, settle, or compromise same.

101.    This action is being commenced on behalf of Plaintiff within one year and ninety days after accrual of these causes of action.

102.    Since the Notice of Claim has been filed as above mentioned, Defendants conducted a statutory NY Gen. Muni. Law § 50-h hearing of Plaintiff on August 7, 2024.

103.    The Village, through its agents, servants, employees and/or assigns, owned, leased, managed, operated, maintained, possessed, supervised and/or controlled the Premises known as the Floral Park Library.

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*29 | P a g e*

104.   On March 2, 2024, while Plaintiff was lawfully upon the said Premises, Plaintiff was caused to be precipitated to the ground from her wheelchair while attempting to exit the public library, causing her to sustain serious and severe personal injuries.

105.   Said accident and resulting injuries to Plaintiff were caused wholly and solely by reason of the culpable conduct of Defendants, their agents, servants, contractors, and employees, without any culpable conduct on the part of Plaintiff contributing thereto.

106.   Defendants, their agents, servants, contractors, employees, licensees, subcontractors, affiliates, agencies, and departments, and those acting under their direction, behest, permission, and control of the said premises described above were careless, reckless, and negligent in the ownership, operation, maintenance, management, supervision and control of the aforesaid location; in allowing and permitting a defective and dangerous condition to exist thereat; creating a condition which was a menace for Plaintiff and other lawful pedestrians, particularly wheelchair-bound pedestrians, using the public library; rendering the public library premises unsafe and dangerous for those having occasion to use same; failing to use that degree of care, alertness and vigilance as was dictated by the nature of the circumstances; maintaining the public library's entrances/exists in derogation of accepted safety standards and in violation of their non-delegable duty to maintain same in a safe and proper manner; failing to properly inspect the premises; failing to place a ramp or covering over the aforesaid dangerous and defective condition; failing to warn Plaintiff and other lawful visitors about the aforesaid dangerous and defective

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*30 | P a g e*

condition threat; failing to provide proper illumination; failing to guard against a danger which Defendants should have anticipated; creating and maintaining a snare, trap, obstacle, hazard, and pitfall; permitting the said dangerous and defective condition to be and remain in an unsafe and hazardous manner with a result that the said area was rendered impassible and unsafe; failing to repair, correct, or remedy the said dangerous condition; allowing the basement-exit doorway to contain a dangerous and sudden change in elevation in violation of the Building Code and the ADA; failing and omitting to take proper and suitable precautions for the safety of Plaintiff and other persons lawfully upon the property; obstructing the emergency exit in the basement of the public library; violating the applicable laws, rules, and regulations of the federal, state, town and Village governments; failing to supervise their agents, servants, and employees engaged in the maintenance and repair of the said public exit/entrance; and permitting the said maintenance to proceed in a dangerous, hazardous and incompetent manner.

107.  Defendants, their agents, servants, contractors, and employees had actual written notice of the dangerous condition, having been previously notified of a virtually identical incident involving the precise same condition.

108.  Defendants are further liable in that they created the dangerous condition, and Defendants, by their agents, servants, contractors, and employees, were further negligent in failing to exercise ordinary care in maintaining and/or repairing the premises in a reasonably safe condition and in failing to warn Plaintiff of the said dangerous and unsafe condition.

109.  By reason of the foregoing, Plaintiff was rendered sick, sore, lame,

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*31 | P a g e*

and further disabled; she severely injured about her head, body, and limbs; and upon information and belief, she suffered and continues to suffer physical pain and mental anguish and further injuries secondary to her impaired and enfeebled condition as a result of the accident.

110. Solely as a result of the culpable conduct of Defendants, their agents, servants, contractors, and/or employees, Plaintiff became obligated for hospital expenses, medical treatment, care, and attention.

111. As a result of the aforesaid culpable conduct of Defendants, their agents, servants, contractors, and/or employees, as aforesaid, Plaintiff has been caused to sustain damages for which Defendants are liable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief as follows, including but not limited to:

**Class Relief Under Plaintiff's First Through Fourth Cause of Action**

a.  A declaration that Defendants' conduct as alleged herein has violated and continues to violate Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

b.  A declaration that Defendants' conduct as alleged herein has violated and continues to violate Section 296 of the New York State Executive Law (Human Rights Law).

c.  An order and judgment enjoining Defendants from violating Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Section 296 of the New York State Executive Law and requiring Defendants to develop and implement a remedial plan to remedy such

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*32 | P a g e*

failures in order to provide meaningful access to the Village's Village Features, including the Library, Village Hall, Police Department, Village Court, Museum, Centennial Gardens, and pedestrian rights-of-way, including sidewalks, curb ramps and pedestrian crossings. At a minimum, Plaintiffs request that Defendants be enjoined to take the following actions:

 i. Ensure that the Village Features are readily accessible and usable by persons with mobility impairments;

 ii. Undertake prompt remedial measures to eliminate physical barriers to access to the Village Features to make such facilities accessible to Plaintiffs in accordance with federal accessibility standards.

 iii. Maintain any existing accessible features of Defendants' Village Features so that such features provide full usability for persons with mobility impairments.

 iv. Ensure that all future new construction and alterations to Village Features are fully compliant with federal accessibility standards;

 v. Prepare a complete Self-Evaluation and a complete and publicly available Transition Plan regarding the accessibility of Village Features in compliance with Title II of the ADA and Section 504.

d. Pursuant to New York Executive Laws § 296, § 297(4), and § 297(9), compensatory damages to each class member;

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*33 | P a g e*

e.   Pursuant to New York Executive Laws § 296, § 297(4), and § 297(9), penalties in the amount of $50,000 per class member, or $100,000 per class member should Defendants' actions be established as willful;

f.   Finding Plaintiff to be the prevailing party in this litigation, and awarding Plaintiff's reasonable attorneys' fees and costs.

g.   Such other and further relief as the Court deems just and proper.

**Individual Relief under Plaintiff's Fifth Cause of Action**

h.   Compensatory damages, including but not limited to direct damages, loss of future earnings and benefits, pain and suffering damages, including but limited to physical, psychological, and emotional damages, and all other economic and non-economic damages available, in the amount of $10,000,000, or to be determined at trial; and,

i.   Such other and further relief as the Court deems just and proper.

Dated:    Syosset, New York
          November 9, 2024

                              Respectfully submitted,

                              **BELL LAW GROUP, PLLC**

By:   _____
      Daniel A. Johnston, Esq.
      Attorneys for Plaintiff
      116 Jackson Blvd.
      Syosset, NY 11791
      (516) 280-3008
      DJ@BellLG.com

*NADIA HOLUBNYCZYJ-ORTIZ v. INCORPORATED VILLAGE OF FLORAL PARK, et al*
*Complaint*
*34 | P a g e*