UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NADIA HOLUBNYCZYJ-ORTIZ,
*Individually, and on behalf of all others*
*similarly situated,*

                  Plaintiff,

     v.

INCORPORATED VILLAGE OF
FLORAL PARK, et al.,
                  Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
24-CV-7828-SJB-ST

**BULSARA, United States District Judge:**

Plaintiff Nadia Holubnyczyj-Ortiz initiated this case against the Incorporated Village of Floral Park claiming that various buildings in the Village—including its Public Library, Village Hall, and Village Garden—fail to provide access to disabled individuals, in violation of the Americans with Disabilities Act ("ADA").  Naming the Village as a defendant, as well as its Mayor, Kevin M. Fitzgerald, and Administrator, Gerard M. Bambrick, and a bevy of buildings themselves, Plaintiff now seeks to certify a class of injured individuals.  (Pl.'s Mem. in Supp. of Mot. to Certify Class dated May 19, 2025 ("Pl.'s Mot."), Dkt. No. 29-2).  Because the motion fails to satisfy basic requirements for certification, the motion is denied.

FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff is a resident of the Village who uses a wheelchair for mobility and qualifies as a person with a disability under the ADA.  (Compl. dated Nov. 9, 2024, Dkt. No. 1 ¶¶ 20–21; *see also* Decl. of Nadia Holubnyczyj-Ortiz dated May 21, 2025

("Holubnyczyj-Ortiz Decl."), attached to Pl.'s Mot. as Ex. A, Dkt. No. 29-3 ¶ 2).  Plaintiff regularly attends meetings in public spaces in Floral Park and experiences difficulty entering and exiting various areas in the Village.  (Compl. ¶ 21).

Between February 6, 2024 and February 21, 2024, Plaintiff attempted and was unable to access the Floral Park Village Hall, the Centennial Gardens, and the Floral Park Museum because they lacked wheelchair-accessible entrances and exits, among other deficiencies.  (*Id.* ¶¶ 47–56).

On March 2, 2024, Plaintiff attended an event held in the basement of the Floral Park Library.  (*Id.* ¶ 6).  The basement was only accessible by way of a chairlift, and on that day, it was out of service, which required her to be carried down the stairs.  (*Id.* ¶¶ 6–7; Holubnyczyj-Ortiz Decl. ¶¶ 5–6).  During the event, Plaintiff observed people coming in directly from the parking lot through a basement door.  (Compl. ¶ 8).  To avoid repeating the "embarrassment of earlier," Plaintiff went to exit via the door to the parking lot.  (*Id.*).  On the other side was an unmarked step.  (*Id.* ¶ 9).  Plaintiff, not noticing the step, tumbled over it and was thrown from her wheelchair.  (*Id.*; Holubnyczyj-Ortiz Decl. ¶ 7).  Plaintiff suffered multiple broken bones, a dislocated shoulder, internal bleeding, multiple facial lacerations, and loss of consciousness.  (Compl. ¶ 9; Holubnyczyj-Ortiz Decl. ¶ 8).  Plaintiff attributes her injuries to the Library's lack of "wheelchair-accessible travel routes" and "impermissible changes in level exceeding a half inch without a ramp," (Compl. ¶ 44), as well as the inoperable platform lift, (*id.* ¶ 45).

2

Based on these incidents, Plaintiff alleges that the Village has largely ignored its requirements under the ADA to take affirmative steps in making its public buildings, facilities, and pedestrian routes accessible to persons with disabilities.  (Compl. ¶ 4; Pl.'s Mot. at 2).  Plaintiff also alleges that the Village has yet to conduct a complete self-evaluation of its current facilities or create a publicly available ADA transition plan, which includes a schedule for making accessibility improvements to Defendants' facilities.  (Pl.'s Mot. at 2; Compl. ¶¶ 5, 43).

Plaintiff commenced this action on November 11, 2024.  (Compl.).  She seeks injunctive and declaratory relief, (*id.* at 32–33), on her behalf and on behalf of all persons similarly situated for alleged violations of Title II of the ADA, (*id.* ¶¶ 62–77), Section 504 of the Rehabilitation Act of 1973, (*id.* ¶¶ 78–85), and the New York Human Rights Law, (*id.* ¶¶ 90–97), and, in her individual capacity, she seeks damages for negligence, (*id.* ¶¶ 98–111).  The parties completed briefing on Plaintiff's motion to certify an ADA-based class on August 22, 2025.

## DISCUSSION

Class certification is governed by Federal Rule of Civil Procedure 23.  "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiffs seeking class certification under Rule 23 must satisfy each of the conditions in Rule 23(a).  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Dukes*, 564 U.S. at 348.  "The party seeking 'class certification must affirmatively demonstrate . . . compliance with the

3

Rule,' and a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237–38 (2d Cir. 2012) (quoting *Dukes*, 564 U.S. at 350–51). "Rigorous analysis" means that:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41.

A plaintiff seeking class certification must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023) (quoting Fed. R. Civ. P. 23(a)). These requirements are referred to as numerosity, commonality, typicality, and adequacy. In addition, Rule 23(a) has been found to contain an implicit requirement of "ascertainability." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("The ascertainability doctrine that governs in this Circuit

4

requires only that a class be defined using objective criteria that establish a membership with definite boundaries.").  The Court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met," *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41, by a preponderance of the evidence, *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  The record before the Court does not support a finding for any of the elements for class certification.

## I.    Ascertainability

As a preliminary matter, Plaintiff has failed to show that the proposed class is ascertainable.  The ascertainability requirement is a "modest threshold requirement" that evaluates whether there is a "focused target for litigation."  *In re Petrobras Sec.*, 862 F.3d at 269.  Without such an objective, "the class itself cannot coalesce, rendering the class action an inappropriate mechanism for adjudicating any potential underlying claims."  *Id.*  "[A] class should not be maintained without a clear sense of who is suing about what."  *Id.*

A class is ascertainable if it is "defined using objective criteria that establish a membership with definite boundaries."  *Id.*  The relevant inquiry "is whether determinations as to class membership are objectively *possible*."  *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 717 (2d Cir. 2023) (quotation omitted).

Plaintiff provides varying and shifting definitions of the class she seeks to certify. In the Complaint, Plaintiff defines the class as everyone "with mobility disabilities" who were and are currently being denied "the benefits of the Village's public facilities,

5

public rights of way, sidewalks, programs, and services." (Compl. ¶ 22; *see also id.* ¶ 30 (including individuals with "qualified mobility impairments")). In her motion for certification, Plaintiff defines the class as "differently abled people" who could not enter and exit "public buildings." (Pl.'s Mot. at 10). And in the proposed class Notice, the class is defined as anyone "with a physical disability as defined by [the ADA]" who has visited "any public building owned and operated by [Defendants] from March 2, 2021 to the present." (Proposed Notice of Lawsuit, attached to Pl.'s Mot. as Ex. B, Dkt. No. 29-4 at 1). This lack of stability in the definition in and of itself undermines a finding of ascertainability. *See, e.g.*, *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 127–28 (S.D.N.Y. 2016) ("The very fact that counsel defines the class in at least four different ways makes the class unascertainable.").

Even within one of these three proposed classes, Plaintiff's definitions lack objective criteria for class membership. For example, Plaintiff does not provide the means to determine how "disability" will be determined and what kinds of disabilities are included. Even if a class was limited to those who had a "mobility impairment" or the broader "differently abled people"—a term which could include physical, mental, or other disabilities—she provides no definition of either. With the exception of her Notice, Plaintiff does not elsewhere tether her definition of "disability" to the ADA, and she uses modifiers not in the statute. Separately, for some of her proposed class definitions, the purported injury is standardless. Though it is possible to determine someone who could not enter and exit a building, another proposed class defines injury as those who were denied "benefits" of a public facility. Is that coextensive with entry

6

into the building?  Is that use of the facilities within the building?  Is it use of the services provided by the agency housed in the building?  Quite separate from these definitional problems, there is another uncertainty: whether class members are those who live in the Village or elsewhere (including anywhere in the county, state, from the United States, or abroad).  The Complaint says that all class members are located in the Village, (Compl. ¶ 65), and the proposed Notice suggests "Defendants' records" determined who received notice, (Proposed Notice of Lawsuit at 1), but no class definition contains any such limitation.[1]

And finally, Plaintiff does not limit class members to those who attempted to use or enter the handful of Village buildings identified in her expert report.  Instead, she defines the class as anyone who could not access a "Village Feature," i.e. not just a building, but the Village's programs, benefits, and "public" rights of way.  This could be hundreds if not thousands of locations.  But numbers aside, while determining ownership of a building may be straightforward, the same cannot be said for driveways, easements, sidewalks, entrances to non-public buildings, let alone "programs" or "benefits," which could be run by other governments (including New

---

[1] The Notice says Defendants' records determined that the person receiving the notice was disabled.  (Proposed Notice of Lawsuit at 1).  It would be quite something if a municipality kept records about who living there had a disability.  And if such records did exist, it is hardly obvious they could simply turn over such information—core privacy information protected by any number of state and federal laws—in this litigation.  Moreover, the Notice is to be sent to anyone who has a disability, regardless of whether they tried to enter a building.  In other words, it is being distributed to individuals who suffered *no injury*.  "[N]o class may be certified that contains members lacking Article III standing."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  Yet that is what is proposed here.

York State and Nassau County) or private entities.  (*E.g.*, Defs.' Mem. in Opp'n to Pl.'s Mot. dated July 25, 2025, Dkt. No. 30 at 7 (noting that the Museum is run by the Village Historical Society, a non-profit entity that is distinct from the Village, and that the Village does not have authority over the LIRR Floral Park Station)).

These manifold definitional problems are each barriers to class ascertainability. And that core defect also undermines every other class certification element.  *In re Petrobras Sec.*, 862 F.3d at 269 n.20 ("Ascertainability provides a guiding principle for the otherwise murky analysis of classes that, though ostensibly defined by objective criteria, nonetheless present fatal challenges of determinability.").

## II.    Numerosity

Rule 23(a)(1) requires that the prospective class be so numerous that joinder is "impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Plaintiff argues that it is impractical to determine the full number of class members given that Defendants have allegedly failed to adhere to the ADA for over 30 years across several locations.  (Pl.'s Mot. at 7).  She asks the Court to draw from this allegation an inference that there are numerous prospective class members.  While "[p]laintiffs need not establish the precise number of class members," any inference that the number is substantial must still "rely on reasonable inferences drawn from the available facts."  *Morales v. Rochdale Village, Inc.*, No. 15-CV-0502, 2018 WL 4522084, at *9

(E.D.N.Y. Aug. 1, 2018) (citing *Robidoux*, 987 F.2d at 935), *report and recommendation adopted*, 2018 WL 4697271 (Sep. 28, 2018).

Here, alleging that the Village has failed to comply with the ADA does not mean that there are more than 40 class members. That is, simply asserting that there are individuals with a disability who have been denied access to a Village facility tells us nothing about how many such people may exist. It may be fair speculation, but speculation is all that it is. Plaintiff's experience—with a handful of locations—tells us nothing about the other locations or the number of people seeking accommodation at the locations she visited or includes in her class.[2]

In Plaintiff's second affidavit, submitted with her reply (which is neither dated nor signed) she says she has "spoken to and been contacted by a number of people who have found themselves unable to access [Village] buildings." (Holubnyczyj-Ortiz Reply Decl., attached to Pl.'s Reply as Ex. E, Dkt. No. 31-2 ¶ 5). But this testimony, nonetheless, asks the Court to speculate as to the number of individuals with whom Plaintiff has spoken. Speculation cannot satisfy numerosity. *See Alharbi v. Miller*, 368 F. Supp. 3d 527, 548 (E.D.N.Y. 2019) ("'What evidence there is in the record as to the size of the 'class' and the impracticability of joinder is pure speculation,' and a class cannot

---

[2] The Village provided evidence of its efforts to increase ADA compliance. (*See* Aff. of Gerard M. Bambrick ("Bambrick Aff."), attached to Defs.' Opp'n, Dkt. No. 30-1 ¶¶ 8, 24, 35 (describing, *inter alia*, the construction of an accessible ramp at the Library in 2022, a "Road Program" to replace an estimated 350 curb cuts with ADA compliant curb cuts, and construction of an ADA-compliant concrete paver pathway to the entrance of Centennial Gardens)). It is impossible to gauge the impact of this evidence, not due to the fault of the Village, but because Plaintiff's amorphous class definition makes it impossible to determine whether such remediation is impactful and significant or inconsequential.

be certified on speculation." (quoting *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968));

*e.g.*, *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 67, 70 (E.D.N.Y.

2014) (denying class certification where plaintiff "rel[ies] on pure speculation or bare

allegations in order to demonstrate numerosity" (quotation omitted)).

Plaintiff further argues that asking for proof would require her to "prove a

negative."  (Pl.'s Mem. in Reply & Further Supp. of Pl.'s Mot. dated Aug. 22, 2025 ("Pl.'s

Reply"), Dkt. No. 31 at 1).  Plaintiff misapprehends her burden—some evidence must be

proffered from which a reasonable inference of numerosity can be inferred.  Where

there is none, the element has not been satisfied.  *See, e.g.*, *Samele v. Zucker*, 324 F. Supp.

3d 313, 334 (E.D.N.Y. 2018) (finding no numerosity where plaintiffs failed to present any

evidence or reasonable estimate of class size); *Oladapo v. Smart One Energy, LLC*, No. 14-

CV-7117, 2017 WL 5956907, at *8 (S.D.N.Y. Nov. 9, 2017) ("The plaintiff here has not

presented one iota of evidence, as to the number of customers who purchased variable

rate energy plans . . . . While common sense suggests that Oladapo is not the only

person who did so, it is his burden to establish that the Class is sufficiently numerous to

satisfy Rule 23(a)(1)." (quotation omitted)), *report and recommendation adopted*, 2017 WL

5956770 (Nov. 30, 2017).

### III.    Commonality and Typicality

The commonality and typicality requirements "tend to merge" with each other

because "[b]oth serve as guideposts for determining whether under the particular

circumstances maintenance of a class action is economical and whether the named

plaintiff's claim and the class claims are so interrelated that the interests of the class

members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Commonality exists if plaintiffs' claims share a common question of law or fact. Fed. R. Civ. P. 23(a)(2).  This requires the "plaintiff to demonstrate that the class members 'have suffered the same injury,'" *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of the Sw.*, 457 U.S. at 157), not "merely that they have all suffered a violation of the same provision of law," *id.* at 349–50 (noting that the language of Rule 23(a)(2) is "easy to misread, since any competently crafted class complaint literally raises common questions" (quotation and alteration omitted)).  That is,

> [i]t asks not simply whether there are questions of law or fact common to the class, but whether a class action is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." . . . [T]here must be "a common contention . . . of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (alterations in original) (quoting *Dukes*, 564 U.S. at 350).  Ultimately, in deciding whether commonality exists, "the question becomes whether dissimilarities between the claims may impede a common resolution."  7A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1763.1 (4th ed. 2025).

As for typicality, this

> requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.  When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.

*Robidoux*, 987 F.2d at 936–37 (citations omitted); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 376–77 (2d Cir. 1997).

Plaintiff summarily asserts that commonality is met given her allegation that the Village has a policy or practice of non-compliance with the ADA, and that the class members' claims will rise and fall with whether this policy exists.  (Pl.'s Mot. at 8).

With the record presented, the Court cannot perform the required inquiry under *Dukes* to determine whether class members have suffered the same injury and whether there is a common contention that will resolve an issue central to the class's claims.  *See* 564 U.S. at 350.  Simply asserting that all putative class members' claims implicate the ADA does not itself create a common legal issue.  *See id.* at 349–50 ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same provision of law." (quotation omitted)).  Nor is simply assuming that other class members have suffered non-accommodation injuries enough.  *Id.* at 351 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." (quotation omitted)); *see, e.g.*, *Plaintiffs 1-3 v. City of New York*, -- F. Supp. 3d --, No. 25-CV-2397, 2025 WL 3754084, at *9 (E.D.N.Y. Dec. 29, 2025) (denying class certification where there was insufficient evidence for the Court "to conduct the rigorous analysis required").

Plaintiff relies on her testimony and allegations of non-compliance and an expert report provided in reply.  The November 2024 report by registered architect, Heather Brin, analyzes accessibility issues in the Village.  (Heather Brin Report dated Nov. 3, 2024, attached to Pl.'s Reply as Ex. F, Dkt. No. 31-3 at 1).  The report chronicles various

ADA violations that Brin observed in her investigations of the Floral Park Library, the Village Hall, the Centennial Gardens, and the Floral Park Museum, focusing on issues with egress. (*Id.* at 57). While the report concludes that the Village has not provided accessibility elements within these specific spaces, it does not itself show a common policy that led to the alleged non-compliance. The existence of multiple ADA violations does not establish, standing alone, that those violations resulted from the same source, practice, or policy. Simply using the same statute, no matter the multitude of claims, is not sufficient to demonstrate commonality. *E.g.*, *Pagan v. Abbott Lab'ys, Inc.*, 287 F.R.D. 139, 148 (E.D.N.Y. 2012) ("[T]he fact that the Plaintiffs may have suffered a violation of the same provision of law — that is, the NYGBL or the NHCPA — does not necessarily mean they suffered the same injury under the *Dukes* standard."); *Oakley v. Verizon Commc'ns Inc.*, No. 09-CV-9175, 2012 WL 335657, at *14 (S.D.N.Y. Feb. 1, 2012) ("That many different Verizon employees were denied FMLA leave, for a variety of reasons under a variety of policies in a variety of locations, does not [ ] make the questions in each class member's case common to the others. . . . In other words, the possibility that the same law was violated in a variety of ways does not lead to the 'common answers' that make class litigation a productive endeavor.").

And separately, the Report — while detailing the alleged violations by Defendants — says nothing about the lack of accessibility experienced by class members (it simply assumes that where there have been ADA violations, there must have been some set of individuals who have experienced a lack of accommodation). And while some injury from a pattern of violations could be inferred, without knowing the

13

contours of anyone else's injury, typicality cannot be satisfied.  That is because there is zero information from which to conclude that Plaintiff's injury or harm is typical of what was suffered by other class members, or instead far more than a minor variation from them.  *E.g.*, *Heggs v. City of New York*, No. 17-CV-3234, 2023 WL 9786044, at *19 (E.D.N.Y. Aug. 24, 2023) (denying class certification where there was no evidence "[a]s to the injuries the rest of the class may have suffered," and plaintiff relied only on the fact that other people with disabilities had been arrested, leaving the court to speculate as to whether the lead plaintiff's injuries were sufficiently typical of the proposed class members' potential injuries), *report and recommendation adopted*, 2024 WL 759439 (Feb. 23, 2024).[3]

## IV.    Predominance

While Plaintiff's failure to satisfy the elements under Rule 23(a) is sufficient to deny the motion, the Court nonetheless addresses Rule 23(b), as the same issues discussed above prevent a finding of predominance.

---

[3] Defendants do not contest the adequacy of representation and given that class certification otherwise fails, the Court does not address it here.

Plaintiffs seeking to certify a class under Rule 23(b)(3) [4] must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the predominance and superiority requirements.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding." *Id.* at 623–24.

"A court examining predominance must assess (1) 'the elements of the claims and defenses to be litigated,' (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief,' and (3) 'whether the

---

[4] Plaintiff sought certification under the ADA, (Pl.'s Mot. at 1–2, 7–8, 10; *see also* Proposed Notice of Lawsuit at 2), and seeks only injunctive relief under the ADA, (Compl. at 32–33). A party seeking to certify a class with the intention of obtaining injunctive relief typically proceeds under Rule 23(b)(2). (Indeed, the Court is not aware of a single case where exclusively injunctive relief was granted under Rule 23(b)(3)). And the concept is incongruous: class-wide injunctions of the kind available under the ADA are rarely amenable to having individual opt-outs as contemplated for Rule 23(b)(3) classes.) Yet, here Plaintiff sought certification under Rule 23(b)(3). And in so doing she imposed on herself and the class an additional set of requirements (including predominance, notice, and an opportunity to opt-out) not present for Rule 23(b)(2) classes. *See* 7AA Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1775 (3d ed. 2025) ("Typically money-damage class actions fall under Rule 23(b)(3), which imposes additional notice requirements and opt-out rights for the class members, as well as findings that a class action would be superior to individual litigation and that common questions predominate over individual ones.").

common issues can profitably be tried on a class[-]wide basis, or whether they will be overwhelmed by individual issues.'" *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)).  Designed to test the proposed class's cohesiveness, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted).  While individualized damages determinations alone cannot preclude certification under Rule 23(b)(3), it is a factor to "consider in deciding whether issues susceptible to generalized proof outweigh individual issues." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408–09 (2d Cir. 2015) (quotation omitted).

Here, Plaintiff simply restates the relevant legal standard and concludes that predominance is satisfied, with no reference to evidence.  (Pl.'s Mot. at 11–12).  Given the proposed class's lack of definition, the Court cannot conduct a proper predominance inquiry.  All that Plaintiff argues is that her individual injuries and damages do not undermine certification.  (Pl.'s Reply at 2–3).  But again, Plaintiff misconstrues her burden.  Because Plaintiff has failed to present a definite class, let alone demonstrate that there are common questions amongst the class, the Court cannot conclude whether common issues will predominate, or whether any potentially individualized inquiries (including damages such as the extent, cause, and location of harm), will predominate.  *E.g.*, *Aboah v. Fairfield Healthcare Servs., Inc.*, 662 F. Supp. 3d 192, 216–17 (D. Conn. 2023) (denying class certification where plaintiffs presented no

evidence that defendants had a common policy meaning that liability would "vary by [class member] based on distinct inquiries specific to each [class member]").

CONCLUSION

For the reasons explained above, Plaintiff's motion for class certification is denied.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   March 25, 2026
        Central Islip, New York

17